UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE COSTANTINI, ESQ., AS EXECUTOR FOR THE ESTATE OF JOAO AZEVEDO,<br><br>*Plaintiff*,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUSTEE, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-WMC2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-WMC2; WELLS FARGO BANK, N.A; SPECIALIZED LOAN SERVICING, INC.<br><br>*Defendants*. | No. 3:21-cv-100 (MPS) |

**RULING ON MOTIONS TO DISMISS**

Plaintiff Lawrence Costantini, as executor for the estate of Joao Azevedo, brings this action against Deutsche Bank National Trustee, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-WMC2, Mortgage Pass-Through Certificates, Series 2006-WMC2 ("Deutsche Bank"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Specialized Loan Servicing, Inc. ("SLS"). Plaintiff asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") against all three defendants. Defendants Deutsche Bank and SLS have filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim. ECF Nos. 37, 39, and 22 (incorporated by reference). Wells Fargo joins in its codefendants' motions and has filed its own motion to dismiss for lack of jurisdiction and failure to state a claim. ECF Nos. 41 and 24 (incorporated by reference). The Court heard oral argument on February 22, 2022.

For the reasons set forth below, I conclude that the plaintiff lacks standing to bring this suit and, therefore, grant the defendants' Rule 12(b)(1) motions and deny their Rule 12(b)(6) motions as moot.

I.  **BACKGROUND**

The following facts are derived from the plaintiff's amended complaint (ECF No. 35) and certain other materials.[1]

The plaintiff, Lawrence Costantini, is Executor of the Estate of Joao Azevedo. ECF No. 35 at 1 ¶ 1.[2] Defendant Deutsche Bank entered into residential mortgage agreements with Joao Azevedo for premises at 62 Hunter Ridge Road, Monroe, Connecticut (the "Property"). *Id.* at 3 ¶ 7. Defendant Wells Fargo was the servicing agent for the mortgages. *Id.* at 3 ¶ 11. Danbury Insurance Company ("Danbury"), which is not a party to this action, provided homeowner's insurance for the Property (the "Insurance Policy"). *Id.* at 3 ¶ 8.

On January 8, 2008, the Property was substantially damaged by a fire that Joao Azevedo's wife, Amanda Azevedo, was later convicted of setting. *Id.* at 3 ¶¶ 9-10; *see* ECF No. 38 at 3 (citing state court criminal docket). After the fire, the Azevedos filed an action against Danbury over Danbury's refusal to reimburse them for the damage caused by Mrs. Azevedo. *Id.* at 3 ¶ 10. Wells Fargo, as servicing agent for Deutsche Bank, intervened in that action and asserted a claim against Danbury to recover Deutsche Bank's insurable interest in the property. *Id.* at 3 ¶ 11. On November 18, 2010, Danbury, Wells Fargo, and Deutsche Bank entered into a

---

[1] Courts may "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) . . . refer to evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 100, 113 (2d Cir. 2000). In deciding the defendants' 12(b)(1) motions I consider a "General Release and Settlement Agreement" between Deutsche Bank, Wells Fargo, and the Danbury Insurance Company, a homeowner's insurance policy issued by Danbury, the mortgage loan agreements, the stipulated judgment between Danbury and the Azevedos in *Estate of Joao Azevedo and Amanda Azevedo v. Danbury Ins. Co.*, No. 8-cv-1078(D.Conn.)(SRU), and email correspondence between counsel for Danbury (who also appears as counsel for the plaintiff in this action) and other counsel for the Estate.

[2] This Ruling cites ECF page numbers throughout.

2

"General Release and Settlement Agreement" (the "Settlement Agreement"), which provided that Danbury would pay Wells Fargo $565,000 and that, in consideration for that payment, Wells Fargo would withdraw its claim against Danbury, and Wells Fargo and Deutsche Bank would release Danbury from any claims under the homeowner's insurance policy. ECF No. 23 at 4-6; *see also* ECF No. 35 at 4 ¶ 12. Upon receipt of the settlement payment, Wells Fargo placed it in a restricted escrow account. ECF No. 35 at 4 ¶ 15. The complaint does not allege that Joao Azevedo was a party to, or a third-party beneficiary of, the Settlement Agreement.

The Settlement Agreement included the following provision:

> Notwithstanding any provision of this Agreement to the contrary, the Parties preserve, and intend no prejudice whatsoever to, the following rights . . . Danbury's right to recoup from Joao Azevedo and/or Amanda Neri Azevedo the [$565,000.00] settlement payment . . . pursuant to the subrogation provisions of the [Insurance Policy] . . .

ECF No. 23 at 6-7. The Insurance Policy provides Danbury with certain rights when an insurance payment is paid to the mortgagee and denied to the mortgagor:[3]

> If this company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of the payment or loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage.

ECF No. 40-3 at 30.

On December 17, 2010, Joao Azevedo died, and an Estate for Mr. Azevedo was opened in the Probate District of Trumbull, Connecticut. ECF No. 35 at 4 ¶ 16 – 5 ¶ 17. Deutsche Bank and Wells Fargo received actual notice of Mr. Azevedo's passing through counsel and appeared

---

[3] The policy also includes a separate "Subrogation" provision, which addresses subrogation of the rights of the "insured"—here, Joao and Amanda Azevedo—when Danbury indemnifies the insured. *See* ECF No. 40-3 at 20. This provision is not relevant here.

3

in the Probate proceedings. *Id.* at 5 ¶ 18. In the course of those proceedings, the Probate Court issued an Order requesting a statement of deficiency and pay-off with respect to the mortgages on the Property. *Id.* at 5 ¶ 19. In compliance with that Order, Wells Fargo acknowledged receipt of the $565,000 payment from Danbury and disclosed that those funds had not been applied to the outstanding mortgage loan balance due to a pending foreclosure action. *Id.* at 5 ¶ 20. That foreclosure action was dismissed on June 26, 2014. *Id.* at 5 ¶ 21. Wells Fargo still did not apply the settlement funds to the mortgages, and it continued to charge interest, penalties, and fees related to the mortgage debt. *Id.* at 6 ¶ 26.

Meanwhile, on January 14, 2014, the Estate and Amanda Azevedo resolved their dispute with Danbury via a stipulated judgment in favor of Danbury in the amount of $583,374.21. *Id.* at 5 ¶ 22.

On November 24, 2015, Deutsche Bank instituted a new foreclosure action against Joao Azevedo. *Id.* at 6 ¶ 24. Although they had actual knowledge of Mr. Azevedo's death and of the plaintiff's representation of the Estate (because of their participation in the Probate proceedings), "the defendants, collectively," failed to notify the Estate properly and adequately of the pending foreclosure. *Id.* at 6 ¶ 25. On February 10, 2017, while the foreclosure action was pending, Wells Fargo transferred the right to service the mortgage loans to Defendant SLS. *Id.* at 6 ¶ 27. On September 12, 2017, the Property was sold through foreclosure by sale for $459,683.06. *Id.* at 6 ¶ 28. The Estate was not notified of the sale. *Id.* at 7 ¶ 29. On January 23, 2018, Deutsche Bank filed a Motion for Deficiency Judgment, which did not acknowledge, reference, or credit the settlement payment from Danbury and did not set forth the amount of the alleged deficiency. *Id.* at 7 ¶ 30. Deutsche Bank voluntarily withdrew that motion on January 11, 2021, after

attempting to collect the alleged deficiency and charging penalties, costs, fees, and interest for nearly three years.  *Id.* at 9 ¶ 43.

The defendants have at no point provided a true, complete, and accurate accounting of the mortgages issued by Deutsche Bank to Joao Azevedo.  *Id.* at 7 ¶ 31.  In addition, none of the defendants has released or accounted for the settlement payment, nor have they applied it to the mortgage debt.  *Id.* at 7 ¶¶ 32-34.  SLS continues to attempt to collect on the mortgage loans on behalf of Deutsche Bank and has sent "balloon payment" notices "directly to the deceased Joao Azevedo" indicating an unpaid principal balance on the mortgage loans of $124,725.23.  *Id.* at 11 ¶ 51.

## II.     LEGAL STANDARD

### A.  Rule 12(b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2009) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)).  When deciding whether to grant a 12(b)(1) motion to dismiss, a court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to [the plaintiff]."  *McGinty v. State,* 193 F.3d 64, 68 (2d Cir. 1999).[4]

---

[4] The Second Circuit has not always been clear on this point, stating, at times, that on a Rule 12(b)(1) motion, the court should *not* draw inferences in the pleader's favor. *Compare McGinty*, 193 F.3d at 68 (in reviewing dismissal under Rule 12(b)(1), "we must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to plaintiffs") *with Shipping Fin. Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.") and *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) ("On appeal of the district court's order on the motion to dismiss [under Rule 12(b)(1)], we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs."). In *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167 (2d Cir. 2008), the court suggested that these different statements were reconcilable, although it did not explain how: "The court must take all facts alleged in the

### III.   DISCUSSION

**1) Rule 12(b)(1)**

Defendants argue that the Court lacks subject matter jurisdiction because the plaintiff lacks both Article III and prudential standing. ECF Nos. 38, 41-1. I agree with the defendants and conclude that the plaintiff's claims must be dismissed for lack of standing.

**a) Article III Standing**

"[S]tanding is an essential part of the case-or-controversy requirement of Article III," *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992), and "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (quoting *Lujan*, 504 U.S. at 560-61). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks, brackets, and citation omitted). I conclude that the plaintiff has failed sufficiently to allege injury and so do not address causation and redressability.

---

complaint as true and draw all reasonable inferences in favor of plaintiff [on a Rule 12(b)(1) motion], but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* at 170 (internal quotation marks, citations, and alteration omitted). In any event, in this ruling, I take as true the allegations in the plaintiff's complaint and draw all reasonable inferences in his favor.

To show injury, the plaintiff must establish that it has "sustained an 'injury in fact' which is both 'concrete and particularized' and 'actual or imminent.'" *Cortland St. Recovery Corp. v. Hellas Telecommunications*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Lujan*, 504 U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. An injury is concrete if it "actually exist[s]," even if it is "intangible." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Even "minor, non-financial injuries" can be sufficient for standing. *See Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) ("The Second Circuit cited decisions of several sister circuits finding minor, non-financial injuries sufficient to confer standing for a claim under the TCPA.").

The plaintiff alleges that because Danbury was subrogated to the defendants' rights to enforce the mortgage loan agreements under the Settlement Agreement and the Insurance Policy, the defendants no longer had those rights when they foreclosed on the Property. The defendants also allegedly failed to apply the settlement payment to the mortgage debt and so received a "double recovery" for their interest in the property. These actions, according to the plaintiff, violated the mortgage agreements, the implied covenant of good faith and fair dealing, and CUTPA, and unjustly enriched the defendants. *See, e.g.,* ECF No. 35 at 10 ¶ 48, 11-12 ¶¶ 44-45, 14 ¶¶ 44-45, 17 ¶ 55, 26 ¶¶ 49-50, 28-29 ¶¶ 54-55. The only injury the plaintiff, as executor of the Estate, claims to have suffered as a result of this alleged misconduct is the deprivation of an asset (the Property) that he could have used to pay the Estate's debt to Danbury. ECF No. 35 at 10-11 ¶¶ 49-50. The defendants argue that this is insufficient for standing, and I agree.

Following the Second Circuit's decision in *Rajamin v. Deutsche Bank National Trust Co.*, I conclude that the plaintiff has failed to allege that the Estate sustained an injury in fact. In

*Rajamin*, the plaintiffs alleged that they were injured by the defendant's demands for payment on mortgages[5] and initiation of foreclosure proceedings because the defendant, a trustee for four trusts, did not own the relevant mortgages. 757 F.3d 79 (2d Cir. 2014). According to the plaintiffs, while the defendant claimed to have acquired ownership of the mortgages via transactions involving written assignment agreements, the parties to the assignment agreements – which did not include the plaintiffs – had failed to comply with them. *Id.* at 81-83. The Second Circuit rejected the plaintiffs' argument that they were injured by the defendant's collecting their mortgage payments and foreclosing on their properties, even if the defendant did not own the mortgages due to noncompliance with the assignment agreements. Specifically, the court held that where there was "no allegation that plaintiffs [ever] paid more than they owed [under the loan agreements] or [ever were] asked to do so," no allegation that the plaintiffs "ever received a bill from any entity other than defendant[]," no "suggestion that plaintiffs were in immediate danger—or indeed, any danger—of having to make duplicate loan payments," and no "allegation of any threat or institution of foreclosure proceedings against any plaintiff by any entity other than the defendants," the "plaintiffs failed to allege injuries sufficient to show constitutional standing to pursue their claims." *Id.* at 85-86.

The plaintiff's claims are analogous to those of the *Rajamin* plaintiffs. Like those plaintiffs, the plaintiff claims that the Estate was injured because an entity without the right to foreclose foreclosed on its property. Also like those plaintiffs, the plaintiff here does not claim that the mortgages were not in default, and Plaintiff's counsel acknowledged at oral argument that they were and that at least some party had the right to foreclose. Further, the plaintiff does

---

[5] Technically, the relevant documents were "promissory note[s] secured by a deed of trust on the home—equivalent to a mortgage under California law," 757 F.3d 79, 81 (2d Cir. 2014), but I will refer to them here as mortgages.

not claim that the Estate was asked for or made duplicate *mortgage* payments to Danbury and the defendants, or that the Estate was threatened with duplicate foreclosure actions.[6]

This case may be distinguished from *Rajamin* in one respect: while Danbury has not pursued foreclosure or demanded payment under the mortgages, the Estate does owe Danbury $583,374.21, an amount that Danbury wishes to collect from the Estate. The plaintiff argues that the Estate was injured because, had the defendants not foreclosed, the Estate would have possessed an asset that it could have used to pay off at least some portion of its debt to Danbury. *See* ECF No. 35 at 11 ¶ 50. But because the plaintiff does not argue that no foreclosure should have occurred, he acknowledges that the Estate would have lost the Property regardless of whether the defendants or Danbury foreclosed on it. While the Estate owes a larger debt to Danbury than it would have if Danbury had foreclosed on the Property, the amount of that debt exceeds the foreclosure sale amount. ECF No. 35 at 5 ¶ 22 (alleging that Estate and Mrs. Azevedo owe Danbury $583, 374.21 under stipulated judgment) and 6 ¶ 28 (Property sold at foreclosure sale for $459,683.06). At oral argument, Plaintiff's counsel conceded that the debt owed to Danbury exceeds the proceeds of the foreclosure sale. Thus, the plaintiff does not allege that the Estate would have retained for itself any proceeds of the foreclosure sale had Danbury, rather than Deutsche Bank, foreclosed. Further, the existence of the debt has no practical effect on the Estate. The Estate has a petition for insolvency pending, ECF No. 38-3 at 2,[7] and can close without paying the debt owed to Danbury. The complaint does not suggest that the

---

[6] Plaintiff's counsel stated at oral argument that the Estate owes money to both Danbury and the mortgagees, but the money owed to Danbury is a result of the stipulated judgment, a document that makes no reference to the mortgage loans and does not characterize the amount owed to Danbury as mortgage debt. ECF No. 40-7.

[7] As explained above, the Court may consider this email correspondence between counsel for the plaintiff (and Danbury) and other counsel for the Estate because reference to material outside the pleadings is permitted when ruling on a motion to dismiss under Rule 12(b)(1). *See Makarova v. U.S.*, 201 F.3d 100, 113 (2d Cir. 2000). In addition, Plaintiff's counsel confirmed at oral argument that the insolvency petition remains pending.

plaintiff or any of the beneficiaries of the Estate are personally liable for the debts of the Estate, and Plaintiff's counsel acknowledged during oral argument that they were not.[8]  An Estate's being *more* insolvent than it would have been but for the actions of the defendants is not an actual, concrete injury and so not a basis for standing to challenge the defendants' allegedly improper foreclosure of the Property.

b) **Prudential Standing**[9]

The plaintiff also lacks prudential standing to bring his claims challenging the defendants' right to foreclose because his "objections arise from rights created by agreements to which [the Estate] was not a party." *Im v. Bayview Loan Servicing LLC*, No. 16-cv-634(JPO), 2018 WL 840088, at *5 (S.D.N.Y. Feb. 12, 2018).  "The 'prudential standing rule normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Rajamin*, 757 F.3d at 86 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)) (alteration omitted).  Here, the plaintiff alleges that the defendants lacked the right to foreclose because, under the Settlement Agreement, only Danbury possessed that right.  Joao Azevedo was not a party to the Settlement Agreement, which was executed the month before he died.  Accordingly, the plaintiff's objection to the defendants' foreclosure on the Property arises from an alleged transfer of rights via an agreement to which neither Azevedo nor the Estate was a

---

[8] *See also* Conn. Gen. Stat. § 45a-382 (no suit may be brought "against the fiduciary of an estate in course of settlement as insolvent").

[9] While the defendants advance their prudential standing arguments in their motions to dismiss under Rule 12(b)(1), it is not clear whether such motions are the appropriate vehicle for these arguments. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) (describing prudential standing limitations as "closely related to Art. III concerns but essentially matters of judicial self-governance"); *Adson5th v. Bluefin Media, Inc.*, No. 16-cv-143(LJV), 2017 WL 2984552, at *5 (W.D.N.Y. July 13, 2017) ("To the extent that the defendants challenge the plaintiff's Article III standing, the proper procedural route is a motion under Rule 12(b)(1) . . . . To the extent the defendants challenge the plaintiff's prudential standing . . . the proper procedural route is less clear.").  Because I do not rely on any evidence outside the pleadings in holding that the plaintiff lacks prudential standing to assert claims based on its objections to the foreclosure, I need not resolve the issue of whether the motion should be considered under Rule 12(b)(1) or Rule 12(b)(6).

party, and so the plaintiff lacks prudential standing to bring his claims to the extent they are based upon a challenge to the defendants' right to foreclose.

2) **Rule 12(b)(6)**

Because the plaintiff lacks standing, I do not address the arguments raised in the defendants' motions to dismiss for failure to state a claim and deny those motions as moot.

IV.    CONCLUSION

For the reasons set forth above, the Court grants the defendants' motions to dismiss for lack of standing. Accordingly, Deutsche Bank and SLS's motion to dismiss for lack of standing (ECF No. 37) is GRANTED, their motion to dismiss for failure to state a claim (ECF No. 39) is DENIED as moot, and Wells Fargo's motion to dismiss (ECF No. 41) is GRANTED in part and DENIED as moot in part.

IT IS SO ORDERED.

                                                                  /s/
                                          Michael P. Shea, U.S.D.J.

Dated:         Hartford, Connecticut
                       February 23, 2022